DAUS, Plaintiff v OTIS STEEL COMPANY et, Defendants.

Court of Common Pleas, Cuyahoga County.

No. 517461. Decided April 8, 1942.

154

**OPINION**

By McNAMEE, J.

Plaintiff herein is the owner of 43 shares of the convertible first preferred stock of Otis Steel Company (hereinafter called Otis) and brings this action on behalf of herself and all other owners of the first preferred convertible stock of Otis similarly situated.

George Frank, Jr., likewise is the owner of first convertible preferred stock of Otis in the amount of 64 shares, and has filed an intervening petition adopting the allegations and prayer of plaintiff's petition. Plaintiff and the intervening petitioner asserting they are without adequate remedy at law, seek the interposition of this Court to prevent the defendant Otis, and all of its directors from submitting to the shareholders of said company, at a meeting called for April 24th, 1942, three proposals related to and designed to effectuate the sale of substantially all of the assets of Otis to the defendant Jones & Laughlin (a Pennsylvania Corporation) the distribution amongst the stockholders of Otis of the considerations to be received therefor, and the dissolution of the company.

Plaintiff alleges that the adoption of said plan of sale and distribution by the shareholders of Otis will result in a substantial derogation of her rights as the owner of preferred stock; that such proposed contract of sale is unlawful and void; that by its terms it provides for a distribution of the considerations to be received which will unjustly enrich the common stockholders of Otis and oppressively and unfairly deprive the preferred stockholders of a substantial share of the proceeds of said sale in contravention of their contractual rights.

The answer is in effect a general denial, and alleges that plaintiff and the intervening petitioner are not entitled to maintain this suit because they have an adequate remedy at law.

The facts essential to an understanding of the legal questions presented are:

Under date of February 28th, 1942, the directors of Otis entered into an agreement with the Board of Directors of Jones & Laughlin by the terms of which it was agreed to sell substantially all of the assets of Otis to Jones and Laughlin for the considerations and upon

the terms and conditions set forth in said agreement, subject to the approval of the requisite number of stockholders of Otis as provided by its charter and §8623-65 GC. The terms and conditions of the sale are unique and unusual. They involve the submission to the stockholders of Otis, and the approval by them, of three independent proposals—"no one of which shall be adopted or carried out unless the three are approved by the necessary votes at the stockholders' meeting." As stated by defendants in their brief, these proposals are:

"(1)  A proposal to amend the Articles of Incorporation of Otis by changing the liquidation rights as expressed in the present Articles so as to give to the holder of each share of the preferred stock in the event a sale of Otis's assets to Jones & Laughlin is concluded, the following:

"¼ share of the 5% Cumulative Preferred Stock, Series A, of Jones & Laughlin

"¼ share of the 5% Cumulative Preferred Stock, Series B, Convertible of Jones & Laughlin

"1 share of Common Stock of Jones & Laughlin

"Cash equal to the accrued unpaid dividends on the share of Otis Preferred Stock to the date the transaction is closed. As of March 15, 1942, these accrued unpaid dividends amounted to $6.875 per share.

"(2)  A proposal to sell the business and assets of Otis to Jones & Laughlin in accordance with the terms of a Contract of Sale which has been executed on behalf of Otis by authority of its Board of Directors subject to stockholders' approval of all three proposals, and to liquidate the proceeds of the sale to the stockholders of the Company in accordance with the rights of the preferred stockholders as they will be stated in the Articles of Incorporation after amendment by the first proposal, with the balance to the common stockholders.

"(3)  A proposal to dissolve Otis."

In the Contract of Sale of February 28th, 1942, it is specifically provided that:

"* * * If any one of the above mentioned proposals is not approved by the requisite vote of the shareholders of Otis, or if the Articles of Otis have not been validly amended as above provided, on or before October 1, 1942, or such later date as shall be specified by the Purchaser pursuant to Article Fifth of this Agreement, then in either or both of such contingencies, this Agreement shall be deemed to be terminated and cancelled in its entirety, without the

necessity of any declaration or other action on the part of either party hereto, with the same force and effect as though it had never been entered into. * * *"

A consummation of the entire plan depends upon the successful accomplishment of each and all of its three interdependent parts.

Under the terms of the proposed sale, Jones & Laughlin agree to pay:

"ARTICLE SECOND: Subject to any adjustment to be made by reason of the other terms of this Agreement, the consideration to be paid by the Purchaser to or upon the order of Otis for the property to be sold and conveyed as aforesaid shall be:

"(a)   34,293 shares of the 5% Cumulative Preferred Stock Series A of the Purchaser, (said stock being hereinafter called the 'Series A' stock);

"(b)   34,293 shares of the 5% Cumulative Preferred Stock Series B, Convertible, of the Purchaser, (said stock being hereinafter called the 'Series B' stock);

"(c)   366,306 shares of the Common Stock without par value of the purchaser; and

"(d)   the sum of $916,536 in cash."

It is proposed to distribute these securities in accordance with the terms of the proposed amendment to the Articles of Incorporation of Otis by delivering to each preferred stockholder of Otis ¼ share of 5% Cumulative Preferred Stock, Series A, of Jones & Laughlin, ¼ share of 5% Cumulative Preferred Stock. Series B, Convertible of Jones & Laughlin, 1 share of common stock of Jones & Laughlin and cash equal to the amount of the accrued unpaid cumulative dividends amounting to $6.87½ per share, for each share of Otis preferred.

It is estimated that the present approximate value of these considerations, based upon the current market price of Jones & Laughlin stocks is about $62.00. Under the plan the common stockholders of Otis are to receive ¼ share of Jones & Laughlin common stock for each share of Otis common, plus $1.00 in cash and it is estimated that on the basis of present market values this will yield the common stockholders over $6.00 per share for each share of stock now held by them. The total estimated present value of the securities and cash to be paid by Jones & Laughlin is in excess of $13,000,000 which, together with the assumption by the purchaser

of all outstanding obligations of Otis, including a bond issue of more than $13,000,000 represents a purchase price expressed in dollars of abouty twenty-seven million.

The present Articles of Incorporation of Otis provide that the holders of preferred stock are entitled to receive cumulative dividends at the rate of $5.50 per share per annum before any dividend is paid on the common stock. They further provide that in the event of dissolution, liquidation or winding up of the corporation the preferred stockholders shall be entitled to receive out of the assets an amount equal to $105 per share, plus accrued dividends before any distribution is made to the holders of shares of common stock. It is proposed to change the Articles of Incorporation containing the foregoing provisions by the amendment which is to be submitted to the stockholders at the meeting of April 24th, 1942, the complete text of which reads as follows:

"Notwithstanding the provisions of the next preceding paragraph, if substantially all of the assets of the Corporation are sold to Jones & Laughlin Steel Corporation, then upon any dissolution, liquidation or winding up of the Corporation, voluntary or involuntary, the holders of shares of Convertible First Preferred Stock shall be entitled to receive for each such share out of the assets of the Corporation, whether from capital, surplus or from earnings, one-quarter of a share of the 5% Cumulative Preferred Stock, Series A, one-quarter of a share of the 5% Cumulative Preferred Stock, Series B. Convertible, and one share of the Common Stock of Jones & Laughlin Steel Corporation, plus accrued unpaid dividends on such share of Convertible First Preferred Stock to the date of such dissolution, liquidation or winding up, before any distribution of any assets shall be made to the holders of shares of Common Stock; but they shall be entitled to no further or other participation in any distribution. In the event of such sale to Jones & Laughlin Steel Corporation, the dissolution, liquidation or winding up of the Corporation shall be deemed to have occurred on the date on which said securities of Jones & Laughlin Steel Corporation sufficient for such distribution are delivered to a corporate agent of the Corporation with appropriate instructions for the distribution thereof among the holders of the shares of Convertible First Preferred Stock."

Each share of preferred and common stock is entitled to one vote, and in addition the preferred shareholders as a class have the right to vote on all proposed amendments affecting their rights as such. All three proposals to be submitted to the stockholders on April 24th, 1942, require the approval of two-thirds of all outstanding shares, including both common and preferred plus the further

requirement in respect of the proposal to amend the articles of incorporation that at least two-thirds of the preferred stockholders as a class affirmatively vote for or consent to such amendment.

The present capital structure of Otis is as follows:

First Mortgage Sinking Fund 4½% bonds, approximately $13,000,000.
Convertible First Preferred       137,174 shares.
Common Stock           916,536 shares.

The evidence discloses that the holders of 88,261 shares of Otis Preferred, which represents about 64% of all of the preferred stock outstanding, also hold 355,531 shares of Otis Steel Common, or about 38% of the outstanding common stock of the company.

With the Common Stock representing substantially more than five-sixths of all of the outstanding shares of stock a sale of assets or other action requiring a two-thirds vote of both classes of stockholders cannot be authorized without the concurrence of a very substantial majority of the common shareholders.

On the basis of estimated values of the considerations to be received (exclusive of the assumption of outstanding obligations of Otis by the purchaser) it would be impossible to pay the liquidating price of $105 per share to the preferred stockholders and leave anything available for distribution to the holders of common stock under the terms of the proposed sale. The 137,174 preferred shares at $105 per share would amount to over $14,000,000 and as hereinbefore noted the estimated present value of the considerations to be distributed to the stockholders of Otis based on the present market values of Jones & Laughlin shares, is somewhat less than that amount.

Considering these factors, and believing a sale of its assets to Jones & Laughlin to be desirable and in the best interests of all its stockholders, the Board of Directors of Otis proposes the plan to be submitted on April 24th, 1942. Manifestly the common stockholders would not vote for any sale that would render their stock valueless.

That the proposed amendment to the Articles of Incorporation of Otis would materially effect the liquidating value of the preferred stock is not denied. The adoption of this amendment is urged by the defendants not only upon the grounds that it is necessary in order to effectuate the sale, but upon the further ground that it will produce a just and equitable distribution of assets among the two classes of shareholders and provide them with a more profitable and safer investment in a larger, better integrated Steel Company.

The highest market value for Otis Preferred during the past two years, including the accumulated unpaid dividends, was 60¼. Its lowest price was $21 per share. The price range on the common

stock of Otis Steel during the same period was high 12%, low 3¾. As stated in defendant's brief:

"On the basis of the present market for Jones & Laughlin securities the Otis preferred stockholders will receive securities and cash having a market value of approximately $62 per share (securities $55, accrued dividends $6.875). The common stockholders will receive cash and securities in a total amount of about $6¼ a share. Preferred stockholders will thus receive a price higher than the highest price at which their stock has sold at any time in the past two years and almost three times as much as the lowest price at which it sold. The common will receive the equivalent of about one-half of the highest price at which it has sold in that period and less than twice the lowest price at which it has sold (Ex. 1, p. 15)."

The book value of Otis Preferred is $156 and in 1940 it earned over $15.00 per share. Plaintiff asserts that the proposed amendment would compel the preferred stockholders to surrender liquidation rights to the extent of more than $40.00 per share and would result in distributing to the common stockholders as a class about $6,000,000 of assets to which under the present Articles of Incorporation they are not entitled upon liquidation of the company.

Plaintiff further contends that the shareholders holding over 88,000 shares of preferred stock, who also hold more than 355,000 shares of common stock, can and probably will force the adoption of the amendment because such preferred shareholders will recoup through the proposed distribution to common stockholders a substantial portion of their loss resulting from the diminution in the liquidation price of the preferred.

In plaintiff's view the preferred stockholders who own 64% of that class of stock and 38% of the common are in a position to oppress plaintiff and other preferred stockholders who own no common stock. It should be noted, however, that the evidence discloses no plan of concerted action by this group of preferred shareholders. The same results sought to be accomplished by the proposed plan could have been achieved by a statutory merger pursuant to §8623-67 GC. If the procedure of statutory merger had been followed no amendment to the Articles of Incorporation of Otis would be necessary. Such a plan would require only the approval of two-thirds of all of the outstanding shares and would deny to the preferred stockholders the right to vote as a class.

Statutory merger, however, would require the approval of two-thirds of the outstanding voting shares of Jones & Laughlin, and because of this and other reasons not material to the issues in this case the present plan was proposed. Under either merger or sale,

plaintiff as a dissenting shareholder has the right to the fair cash value of her shares upon compliance with the provisions of §8623-72 GC.

Plaintiff makes no claim of fraud or inadequacy of the sale price. She nevertheless insists that the proposed plan seriously impairs her contractual rights as a preferred stockholder. Her claim for the relief sought is based solely upon the alleged illegality of the plan.

Plaintiff argues that the law as declared by the Supreme Court in **Geiger v American Seeding Machine Co., 124 Oh St, 222**, is directly in point and controlling. In that case the Seeding Machine Company had preferred and common stock outstanding and by the articles of incorporation the preferred upon liquidation was entitled to par and accrued unpaid dividends before any payment to the common. The Board of Directors of the Seeding Machine Company entered into a contract with a Delaware corporation by which the latter agreed to purchase the assets of the Seeding Machine Company in return for shares of stock of the Delaware corporation. The contract contained a provision that the sale and transfer was subject to the approval of the holders of three-fourths in amount of the outstanding capital stock of the Seeding Machine Company.

The Seeding Company called a meeting of its stockholders, both common and preferred, to be held May 14th, 1929. With the notice of the meeting which set forth the terms of the proposed sale was enclosed a deposit agreement which the stockholder was asked to sign. The deposit agreement contained an approval of the sale and provided for a distribution of the proceeds of the sale among the common and preferred stockholders, which gave the preferred stockholders less than the liquidation rights specified in the Articles of Incorporation. The sale was approved and completed and the proceeds paid to the Seeding Machine Company. A preferred stockholder who had not approved the sale or consented to any change in his rights brought suit to enjoin the distribution until the preferred stockholders were paid the par value of their stock. The injunction was granted.

In Paragraphs 4 and 5 of the syllabi of **Geiger v American Seeding Machine Company**, the court held:

"Syl. 4. Sec. 8623-65 GC, as it existed prior to July 23, 1929, made provision for sale of all or substantially all the assets of a corporation with the consent of two-thirds of the voting power of the corporation, but neither that section nor any other gave the authority to make distribution of the proceeds of such sale among different classes of stockholders in any manner other than in accordance with the articles of incorporation and the contracts with stockholders as evidenced by the terms of stock certificates.

"Syl. 5. The sale of the entire assets of a corporation and the distribution of the proceeds of such sale among stockholders are

separate matters between separate parties and based upon separate considerations; stockholders of different classes cannot be compelled to give their consent to one as a condition to their concurrence in the other."

As noted in paragraph 4 of the Syllabus of the Geiger case hereinabove quoted, §8623-65 GC, as applicable to the facts in that case did not then authorize a distribution of the proceeds of a sale of all of the assets in any manner except in accordance with the Articles of Incorporation of the selling company. The amendment to that section effective July 23, 1929, reads:

"* * * and if desired may divide or distribute such consideration among its shareholders on such terms and basis and in such manner as its Board of Directors deems expedient when and as authorized by the vote of holders of shares entitling them to exercise at least two-thirds of the voting power, etc."

Defendants stress the fact that §8623-65 GC, as amended was in effect at the time the convertible preferred stock of Otis was issued in 1936, and asserts that its provisions authorizing the distribution of the proceeds of a sale of substantially all of the assets of the corporation must be read into and considered a part of the preferred stockholders' contract with the corporation. Apparently defendants are unwilling to rely solely upon §8623-65 GC as adequate legal sanction for a distribution of the proceeds of the proposed sale among the different classes of its stockholders.

In **Geiger v American Seeding Machine Company, supra,** the Court said:

"It is true that in §8623-15 GC and §8623-72 GC the procedure is provided for altering the terms and provisions of the classes of outstanding shares, but this could only be done by an amendment to the articles of incorporation."

Defendants therefore propose by the amendment of the Articles of Incorporation of Otis to avoid the consequences of a distribution of the proceeds of sale, otherwise than in conformity with the rights of stockholders as expressed in the articles of incorporation of the company. The amendment to be voted by the stockholders on April 24th, 1942, is designed to meet the requirements of law as laid down by the Supreme Court in the Geiger case.

The law is well settled in this state that a certificate of stock is a contract between the stockholder and the corporation, and includes by reference all of the applicable provisions of the statutes of the state and the Articles of Incorporation. That the Articles of Incorporation may be

amended so as to diminish or affect the rights of stockholders where such power of amendment is reserved either by statute or by the articles of incorporation is equally well settled. **Geiger v American Seeding Machine Co., supra; Williams v National Tool Co., 46. Oh App. 427; Harbine v The Dayton Malleable Iron Co., 61 Oh App. 1.**

**Section 8623-14 GC,** provides in part:

"A corporation for profit * * * may alter or add to its articles or change issued shares in any respect by the adoption of an amendment in the manner hereinafter provided in this Act;

"Sub-Sec. 1. Change any or all of the express terms and provisions or designation of issued or unissued shares of any class or series * * *."

Article Fourth, sub-section 5 of Articles of Incorporation of Otis provides:

"Section 5. So long as any shares of Convertible First Preferred Stock shall be outstanding, the Corporation shall not, except with the affirmative vote or written consent of the holders of at least two-thirds in amount of the outstanding shares of Convertible First Preferred Stock (but so far as the holders of shares of Convertible First Preferred Stock are concerned, the Corporation may with such affirmative vote or consent):

"Section 5. So long as any shares of Convertible First Preferred Stock shall be outstanding, the Corporation shall not, except with the affirmative vote or written consent of the holders of at least two-thirds in amount of the outstanding shares of Convertible First Preferred Stock (but so far as the holders of shares of Convertible First Preferred Stock are concerned, the Corporation may with such affirmative vote or consent):

* * * *

"(b) Create or issue any shares of stock having a parity with or priority over the shares of Convertible First Preferred Stock as to dividend or liquidation rights, **or change the terms or provisions of the outstanding shares of Convertible First Preferred Stock.**"

The preferred shareholders of Otis must therefore be held to have accepted contracts subject to modification by a proper exercise of the reserved power to amend the Articles of Incorporation.

The argument of plaintiff that her contractual rights will be impaired by the amendment may be answered by determining whether the proposed amendment is within the reserved powers of amendment as defined by the statutes and stipulated in the Articles

of Incorporation. The amendment by its terms is to become effective only upon a sale of substantially all of the assets of Otis Steel to Jones & Laughlin and the dissolution of the former company. It is not intended that the amendment shall become operative unless the sale is consummated. On Page 17 of the proxy statement forwarded to all stockholders the following appears:

"However, if for any reason a sale of substantially all of the assets of Otis to Jones & Laughlin should not be made, then the rights of the holders of the Preferred Stock of Otis upon dissolution. liquidation or winding up will as a practical matter remain unchanged."

Defendants' counsel state that the corporation plans to withhold filing the amendment with the Secretary of State until it appears reasonably certain that the sale will be effectuated in accordance with its terms. That the filing of this amendment with the Secretary of State, which is a prerequisite to its validity, might be delayed was apparently contemplated by the parties to the contract as evidenced by the following language in Article Eighth of the Agreement.

"* * * Validly amended as above provided, on or before October 1, 1942, or such later date as shall be specified by the Purchaser pursuant to Article Fifth of this Agreement, * * *."

Admittedly the amendment to the Articles of Incorporation is conditional. Likewise both the sale of assets and dissolution of the corporation are conditioned upon the adoption of the amendment. It follows therefore that the proposed amendment to the Articles of Incorporation is by reference a part of the terms of the contract of sale entered into by the Board of Directors on February 28th, 1942. If this interpretation of the contract be correct it provides for both the sale of assets and the distribution of the considerations to be received therefor. The fact that the sale is also contingent upon a vote of shareholders authorizing dissolution adds no factor that would vitiate the construction of the contract, because the resolution to dissolve becomes effective only if the sale is consummated. Thus the question is presented—whether a contract of sale of all the assets of the corporation may also provide for the distribution of the proceeds by an amendment to the Articles of Incorporation which is to become effective only upon the consummation of the sale.

Plaintiff argues that the pronouncement of the Supreme Court, in the **Geiger case (supra)**, particularly the statements in paragraph 5 of the syllabus, hereinbefore quoted, which provide in effect that classes of stockholders cannot be compelled to approve

a distribution of the proceeds of a sale of all the assets of the corporation as a condition to their concurrence in the sale must be given effect so as to prevent the adoption of the plan here proposed.

It must be remembered that in paragraph 5 of the syllabus of the Geiger case the Supreme Court declared the law on the propositions therein stated as it existed prior to the amendment to §8623-65 GC, effective July 23, 1929   This is made clear by the express statements in syllabus 4 of the Geiger case declaring in effect that prior to July 23, 1929, §8623-65 GC, gave no authority to a corporation to make distribution of the proceeds of a sale among different classes of stockholders except as provided in the stockholders' contracts.

This is further evidenced by the following statement of the court at page 238 of the opinion:

"and the statute on May 14, 1929, containing no provision relating to distribution otherwise then in strict accordance with the stock certificates and the articles of incorporation, it must be held that distribution in any other manner, or which would not give to the preferred stockholders all assets up to the amount of the par value of their stock, would be an impairment of the obligation of the contract."

Again at pages 238 and 239 of the Opinion in the Geiger case the court, referring to §8623-65 GC, said:

"The amendments to the statute, which became effective July 23, 1929 (113 Ohio Laws, 443, 446), relate to distribution as well as sale, and if this transaction had occurred after July 23, 1929, there would have been authority for submitting the question of distribution to a stockholders' meeting.  Whether the amendment effective July 23, 1929, is valid, as not impairing the obligation of a contract, we have neither considered nor decided.  That question is not before the court at this time.  Counsel have argued at length both orally and in brief the power reserved in the legislature to alter, amend, or repeal the general laws relating to the organization of private corporations in Ohio. as conferred by Sec. 2, Article XIII, of the Ohio Constitution; but inasmuch as we have reached the conclusion that the manner of distribution was not regulated by the law as it existed on May 14, 1929, we need not at this time consider that question." (Emphasis ours).

By this strong and unequivocal language of the Supreme Court the proscriptive terms of paragraph 5 of the syllabus in the Geiger case are restricted in their application to those cases where there is no legislative authority for combining a sale of assets and the distribution of the proceeds thereof in the same contract.

It is to be noted also that in the Geiger case the plan of distribution was submitted to two-thirds of the voting power of the corporation. While it appears in that case that three-fourths of the preferred shareholders voted for the plan of distribution, nevertheless there was no provision for a vote upon the proposed plan of distribution by classes of stockholders. This situation is noted by the following observation of the Supreme Court at page 238 of the opinion in the Geiger case:

"But even if it should be so construed, there is no statutory provision for requiring a minority of the preferred shareholders to submit the question of their priority to and determination by two-thirds of the voting power of the corporation."

The distinction between the Geiger case and the instant controversy is further emphasized by the subject matter of paragraph 6 of the syllabi of that case, which reads as follows:

"Syl. 6. The procedure outlined by §8623-72 GC is an exclusive remedy for minority stockholders in reference to a sale, but as that section stood in May, 1929, had no application to the distribution of the proceeds of such sale among different classes of shareholders."

Under the terms of §8623-65 GC, as amended, where a plan of distribution of proceeds is a part of the contract of sale. it would seem that the remedy provided for dissenting stockholders by §8623-72 GC is applicable to distribution as well as to the sale, unless §8623-72 GC as amended is invalid. The validity of that section was attacked in the Geiger case, but as hereinabove noted that question was not decided. No case has been brought to the attention of this Court which holds §8623-65 GC, as amended to be invalid, nor is the constitutionality of that section under direct attack here. By providing that the plan of distribution authorized by §8623-65 GC, should be submitted to the preferred stockholders as a class in the form of an amendment to the Articles of Incorporation, the defendants obviate any such attack on the constitutionality of that section.

The foregoing analysis demonstrates that while the conditional character of the amendment to the Articles of Incorporation of Otis makes it a part of the terms of the proposed sale of assets, the pronouncements of the Supreme Court contained in paragraph 5 of the Geiger case can have no application under the statutes now in effect.

The courts of this state have permitted drastic and prejudicial changes in stockholders' contracts under the reserved power to amend articles of incorporation, subject, of course, to the stockholders' rights to the fair cash value of his shares upon dissent.

In **Williams v National Pump Corp. 46 Oh Ap 427**, the following rules were laid down:

"Syl. 1. Statutes authorizing corporations to amend articles by less than unanimous vote of stockholders, and providing for compensation of dissenting stockholders, were part of stockholders' contracts and authorized majority of stockholders to amend articles changing preferred stock to common."

(Section 8623-14, Section 8623-15 and Section 8623-72 GC.)

"Syl. 2. Dissenting stockholder seeking to specifically enforce preference provision in stock held not entitled to such relief, where his preferred stock was changed to common by majority vote of stockholders, since statutory remedy was exclusive (Sections 8623-14, 8623-15 and 8623-72 GC)."

In **Harbine v The Dayton Malleable Iron Co., 61 Oh Ap, p. 1,** the court said:

"Syl. 2. Although, at the time a shareholder purchases stock, the Legislature has not provided by statute that the corporation's articles may be amended in certain respects, nevertheless under **Section 2, Article XIII** of the **Constitution** the shareholders' contract is subject to such future legislation."

"Syl. 3. Under §8623-14 GC, a corporation may amend its articles of incorporation so as to change preferred cumulative shares of stock to new shares and alter the terms and provisions thereof."

Paragraph 3 of the syllabus in **Johnson v Lamprecht, 133 Oh St, 567,** reads:

"Syl. 3. When there is a change in the terms and conditions of stock by reason of an amendment to the articles of incorporation, dissenting shareholders have a remedy under the provisions of §8623-72 GC. If fraud or illegality is found in the enactment of the amendment, the remedy under that section is not exclusive."

**Section 8623-15 GC subdivision (9)** reads:

"An amendment or amended articles when adopted in the manner prescribed in this section shall in the absence of clear and convincing proof to the contrary be presumed to be fair and equitable in every respect to all stockholders."

The evidence in this case requires that this presumption be given effect. The amendment to the Articles of Incorporation is to be submitted in conformity to the statutes and the Articles, and the proof does not disclose any unfairness to the stockholders in the proposed plan.

The Court is of the opinion that the proposed amendment to

the Articles of Incorporation of Otis is within the reserved powers of amendment and that said amendment does not impair the obligation of contracts of the preferred shareholders of Otis under the statutes now in effect.

Defendants have been put to great labor and expense in the negotiations for the sale and the preparations for a meeting on April 24th, 1942. They have forwarded to each stockholder a proxy statement consisting of 108 pages in which are set forth in detail and with clarity all material facts pertinent to the proposed plan. The financial statements of Otis and Jones & Laughlin, including the subsidiaries of each company appear therein, as do the earnings records and dividend payments of each company for a period of many years. Market values of the securities of both companies since the reorganization of Jones & Laughlin in the summer of 1941 are likewise submitted in the statement to stockholders.

The amounts of preferred and common stock of Otis held by its directors, members of their families, and other companies in which the directors are interested, are also disclosed by this statement. The stockholders have been fully informed with respect to every aspect of the proposals. There has not been the slightest suggestion by plaintiffs that any fact or motive has been concealed; no fraud or breach of fiduciary relationship is charged or shown by the evidence.

What is proposed here is not liquidation of Otis in the sense that the corporation is unable to carry on its business, or that it is forced to wind up its affairs because of financial distress. In its essence, the plan submitted is a proposal to exchange the stock of Otis for the stock of Jones & Laughlin in the proportions set forth in the amendment to the Articles of Incorporation. On the basis of market values the exchange seems fair and equitable. On the basis of book values the two ¼ shares of both classes of Jones & Laughlin preferred plus the one share of common stock of that company, which will be received in exchange for each share of Otis preferred, have a book value amounting to over $100 a share in excess of the book value of Otis preferred.

The present book vaule of Otis common is about $6.42 per share, while the book value of the ¼ share of Jones & Laughlin common to be received in exchange, plus the payment of $1.00 per share in cash, amounts to $24.93. These proposals on their face do not seem inequitable.

The Board of Directors of Otis, their families and 24 other corporations in which the directors are interested owned 4,614 shares of preferred and 3,256 shares of common stock of that company on February 16, 1942. As of the same date the members of the Board of Directors alone owned but 926 shares of preferred and 2,856 shares ot Otis common stock. By reason of these relatively small holdings of stock the Board of Directors cannot dominate or control the action of the stockholders.

Who the preferred stockholders are that own 64% of that class of stock and 38% of the common does not appear, nor is there any evidence tending to show that such preferred stockholders plan to combine their holdings to force the adoption of the plan here proposed. It is not suggested by anything in the record that these circumstances of ownership of preferred and common stock in the percentages above noted are otherwise than co-incidental to the plan. In the absence of any showing that such group of stockholders plan to control the action to be taken at the meeting of April 24th, 1942, these circumstances are entitled to little or no weight in balancing the equities between plaintiff and defendants.

The agreement of February 28th, 1942, provides for its rescission by the purchaser in the event more than 10% of the preferred stockholders express their dissent pursuant to the terms of §8623-72 GC. Plaintiff will therefore have an opportunity at the stockholders' meeting to prevent the sale if she can enlist the support of 10% of the preferred stockholders.

Plaintiff has not made a case that justifies this Court in preventing all the stockholders of Otis from exercising their judgment on the wisdom of adopting or rejecting the plan:

"It is only where the proposed action of the directors is plainly illegal that a court of equity will interfere with their management of the corporate affairs at the suit of a stockholder." **10 O. Jur. 381, §266.**

In Lovell v United Milk Products Corp., et al, decided by the United States Circuit Court of Appeals for the Sixth Circuit on March 13, 1935, at page 483, of the Opinion as it appears in the transcript of the record filed in the Supreme Court of the United States, the court said:

"Courts will not substitute their judgment for that of the governing body of private corporations except in cases of actual or constructive fraud."

The Court has read many of the numerous cases from other jurisdictions cited by counsel and given careful consideration to the arguments made. The Court is of the opinion, however, that plaintiff will not be deprived of any vested right by the proposed amendment to the Articles of Incorporation.

Plaintiff has a remedy if she dissents from the sale. This Court believes that remedy to be adequate. Pursuant to the provisions of §8623-72 GC a dissenting stockholder is entitled to what the stock is worth intrinsically. **Miller v Canton Motor Coach, Inc., 58 Oh Ap 94.**

Petition of plaintiff is dismissed. A journal entry may be prepared in accordance with the foregoing.